**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| LUCILLE ANDERSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. 1:20-CV-03263-MLB |
| BRAD RAFFENSPERGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants Brad Raffensperger (the "Secretary"), Rebecca N. Sullivan, David J. Worley, Matthew Mashburn, and Anh Le, all sued in their individual capacity and referred to as the "State Defendants" submit this Brief in Support of their Motion to Dismiss. [Doc. No. 106.]

## INTRODUCTION

The franchise is one of the most basic and fundamental rights we share as Georgians and as Americans.  Because of its importance, the Secretary and State Election Board ("SEB") have undertaken tremendous reforms to make voting safer, easier, and more secure.  These unprecedented acts have ranged from implementing an entirely new statewide voting system, to enacting an overhaul of Georgia's election laws in 2019, and to mailing every registered voter on the active

voter list an absentee ballot request form for the June 2020 primary.  Policymakers have also made Georgia one of the easiest states in which to vote with no-excuse absentee voting, the ability to request absentee ballots up to 180 days before an election, three weeks of early, in-person voting, Saturday voting, online absentee ballot request portal, and other initiatives.  Like everything else, the COVID-19 pandemic has hampered some of these efforts.  But, through it all, more Georgians are voting more frequently and through more means than ever before.  Independent parties rank Georgia's election system as among the most prepared for the pandemic.[1]

Plaintiffs' lawsuit expresses reasonable frustrations with voting in a subset of mostly metro Atlanta counties, and the State Defendants are already acting to address these issues through the State's administrative process.  Plaintiffs' concerns, however, do not state a claim for violations of the United States Constitution.  Indeed, Plaintiffs misdirect their ire at the State, and their shotgun approach of "name everyone and see what sticks" excels in rhetoric but fails in law.

---

[1] See Kavanagh, Jennifer, Quentin E. Hodgson, C. Ben Gibson, and Samantha Cherney, An Assessment of State Voting Processes: Preparing for Elections During a Pandemic. Homeland Security Operational Analysis Center operated by the RAND Corporation, 2020. https://www.rand.org/pubs/research_reports/RRA112-8.html.

The Complaint is unusual in that it claims no statute or regulation imposes an unconstitutional burden on voting.  Instead, it challenges a series of purported omissions of State actors, and it provides virtually no time to enact the non-justiciable remedies it seeks.  On the merits, Plaintiffs adopt a *res ipsa loquitor* legal theory that is inapplicable in constitutional cases.  Ultimately, Plaintiffs fail to state a claim for which relief can be had, and the case should be dismissed.

## BACKGROUND

PLAINTIFFS.  Plaintiffs are three individuals (Anderson, Alami, and Chavez, collectively, the "Individual Plaintiffs"), the Democratic Party of Georgia ("DPG"), and the Democratic Senatorial Campaign Committee ("DSCC").  Two of the Individual Plaintiffs reside in Fulton County (Anderson and Alami), and the third (Chavez) resides in Cobb County. [Doc. 1 ¶¶ 12-14.]  Each describe experiences voting in the 2020 primary election, which occurred in the midst of a pandemic. [*Id.*]  The DPG and DSCC are political organizations that seek to elect Democrats to political office. [*Id.* ¶¶ 15-16.]

DEFENDANTS.  The Secretary is a statewide elected constitutional officer and chairman of the SEB. [Doc. 1 ¶ 17.]  His duties are set forth in various Georgia statutes. *See, e.g.*, O.C.G.A. § 21-2-50.  The other State Defendants are members of the SEB. [Doc. 1 ¶ 18.]  The SEB is an executive branch agency with statutory

duties to generally oversee Georgia elections. *See, e.g.*, O.C.G.A. § 21-2-31.
Raising virtually identical allegations, Plaintiffs also sued members of elections
boards in Fulton, DeKalb, Cobb, Gwinnett, Chatham, Clayton, Henry, Douglas,
and Macon-Bibb counties (the "County Defendants"). [*Id.* ¶¶ 63-196.]  Plaintiffs
did not sue any other county election board nor any other election official
responsible for the administration of the vast majority of election processes
complained of in the complaint for 150 of Georgia's 159 counties.

ALLEGATIONS.  The Complaint alleges one harm: long lines at polls in nine
Georgia counties. [*Id.*]  Plaintiffs allege this harm has been caused by eight acts:
(1) not distributing voting locations "adequate[ly] or equitabl[y];" (2) not having
"suitable" training for poll workers; (3) insufficient staff at polling locations; (4)
insufficient "technical support;" (5) insufficient "time to set up polling locations;"
(6) insufficient backup emergency paper ballots; (7) no "backup paper pollbooks;"
and (8) no "clear guidance and instructions on when to use emergency paper
ballots." [*Id.* ¶ 200.]

Plaintiffs concede these purported harms are occurring in the midst of a
once-in-a-lifetime pandemic, which has "exacerbated problems with lines". [Doc.
1 ¶ 45, 190-96.]  Generally, it led to shortages of poll workers. [*Id.* ¶ 41.]  In Fulton
County, the pandemic caused 300 poll workers to not appear on Election Day. [*Id.*

¶ 89.]  It caused certain polling locations to close. [*Id.* ¶ 190.]  Plaintiffs allege the long lines violate their First and Fourteenth Amendment rights to vote (the *Anderson-Burdick* analysis) (Count I) [doc. 1 ¶¶ 197-203]; their right to substantive due process (Count II) [*id.* ¶¶ 204-09], and Equal Protection based on geographic variances (Count III). [*Id.* ¶¶ 210-14].  Count III is alleged only against the State Defendants.

This Court may take judicial notice of certain other facts and consider them when deciding the motion to dismiss.  Fed. R. Evid. 201(b); *see also Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (taking judicial notice of public disclosures in securities action).  Specifically, this Court can consider that, on August 27, the SEB found probable cause that Fulton County committed violations of Georgia's elections code in its administration of absentee ballots in the 2020 primary election and unanimously voted to refer the case to the Attorney General's office for further legal action.[2]  Seven days later, on September 3, the SEB voted 2-1 (the Democratic member voting "no") to find probable cause to

---

[2] Mark Niesse, *Investigation concludes that Fulton failed to send many absentee ballots*, Atl. J. & Const., Aug. 27, 2020, available at https://www.ajc.com/politics/investigation-concludes-fulton-failed-to-send-many-absentee-ballots.

refer a complaint about lines in Fulton County during the 2020 primary election to the Attorney General's office for administrative prosecution.[3]

## STANDARD OF REVIEW

To survive a motion to dismiss, Plaintiffs must allege a "plausible" set of facts that state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The alleged facts and "reasonable inferences" from them are accepted as true. *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Conclusory statements do not provide a basis to overcome a motion to dismiss. *Greco v. NewRez LLC*, 1:19-CV-01675, 2019 WL 5483749, at *1 (N.D. Ga. July 15, 2019) (Brown, J.).

## ARGUMENT AND CITATION TO AUTHORITY

The Complaint should be dismissed on several grounds. First, Plaintiffs lack standing. Second, Plaintiffs seek unconstitutional relief. Third, the relief they seek is non-justiciable. Fourth, this Court should abstain from granting relief pursuant to the *Burford* doctrine. Finally, each of the counts fails to state a claim for relief against the State Defendants.

---

[3] Mark Niesse, *Georgia election board votes against Fulton for primary problems*, Atl. J. & Const., Sept. 3, 2020, available at: https://www.ajc.com/politics/georgia-election-board-votes-against-fulton-for-primary-problems.

6

A global and ultimately fatal problem with Plaintiffs' theories are that they conflate the responsibilities of the State Defendants with those of the County Defendants. *See, e.g.*, [Doc. 1 ¶¶ 17-18, 39, 42, 57, 98, 113, 119, 127, 141, 155, 166, 173, 180, 188.]  The Secretary's constitutional duties regarding elections are limited to collecting election returns.  Ga. Const. art. II, § 2, ¶ I.  The Secretary and the SEB have specific statutory duties that do not include managing or administering every aspect of state elections.  *See*, *e.g.*, O.C.G.A. §§ 21-2-31 (SEB); 21-2-50 (Secretary); 21-2-50.2 (Secretary's obligations under the federal Help America Vote Act).  The SEB may promulgate regulations to govern certain election matters, O.C.G.A. § 21-2-31, but those regulations must be based on and not expand statutory law.  *N. Fulton Med. Ctr. v. Stephenson*, 269 Ga. 540, 543, 501 S.E.2d 798, 801 (1998).

On the other hand, Georgia counties are responsible for administering elections.  Each county must have an election superintendent. O.C.G.A. § 21-2-70; *see also* O.C.G.A. § 21-2-40 (authorizing creation of county boards of elections and registrars).  Statutory law establishes their duties. *See, e.g.*, O.C.G.A. §§ 21-2-40, 21-2-70 (election superintendents); 21-2-100 (training).

The distinctions between the duties of the State Defendants and the County Defendants matter.  For example, the Secretary trains county election

superintendents. O.C.G.A. § 21-2-50(a)(11).  The superintendents hire and train poll workers (e.g., those who are present at the polling locations during Election Day). O.C.G.A. § 21-2-70(8); Ga. Comp. R. & Regs. 183-1-12-.19.  Put differently, the State trains the trainers, and those election superintendents have the duty of training poll workers within their jurisdiction.

There are also distinct responsibilities when it comes to resources.  The Secretary determines the "forms" of ballots. O.C.G.A. § 21-2-50(a)(1).[4] Superintendents cause the ballots to be "printed accurately and in the form" approved by the Secretary.  O.C.G.A. § 21-2-283.  County Election Officials must equip county election offices with provisional ballots or paper ballots.  O.C.G.A. § 21-2-238 (superintendent responsible for printing ballots); Ga. Comp. R. & Regs. 183-1-12-.18(3) (superintendent to provide polling places with "adequate supply" of provisional ballots).  Moreover, SEB rules require counties to be prepared to timely resupply polling places with provisional ballots while voting is occurring. Ga. Comp. R. & Regs. 183-1-12-.18(3).

County officials are the only government entities with the authority to close, open, or relocate a polling place. O.C.G.A. § 21-2-265.  They alone are responsible

---

[4] The Plaintiffs describe this statute as requiring the Secretary to "prepar[e] ballots," but that preparation does not include printing ballots. [Doc. 1 ¶ 17.]

for ensuring polling locations are "sufficient[ly] staff[ed]." [Doc. 1 ¶ 200.]

O.C.G.A. §§ 21-2-90, 21-2-91.  Similarly, Election Superintendents ensure that

polling locations have a sufficient number of paper emergency ballots.  Ga. Comp.

R. & Regs. 183-1-12-.11(c). Finally, Election Superintendents must make sure that

polling locations have paper backup for the electronic pollbooks.  Ga. Comp. R. &

Regs. 183-1-12-.19.

Plaintiffs gloss over these distinctions and group "Defendants" as being

responsible for their alleged wrongs.  *See generally* [Doc. 1].  A Georgia court,

applying Georgia law, would not.  While Georgia law describes the Secretary as

the "Chief Election Official," O.C.G.A. § 21-2-50(b), it imposes no duties pursuant

to that title other than ensuring compliance with the Help America Vote Act

("HAVA"). O.C.G.A. § 21-2-50.2.  The Secretary has no express statutory duty to

train poll workers—only superintendents.  O.C.G.A. § 21-2-99(a).  Had the

General Assembly wanted the Secretary to train poll workers, it would have

expressly said so.[5]  *See Deutsche Bank Nat. Tr. Co. v. JP Morgan Chase Bank,*

*N.A.,* 307 Ga. App. 307, 311, 704 S.E.2d 823, 828 (2010).

---

[5] Even the DPG's legislators recognize the centrality of county election administration:  in the wake of the 2020 primary, the Fulton County delegation in the Georgia General Assembly introduced HB 1202, which seeks to abolish and reconstitute the Fulton County Board of Elections. *See* http://www.legis.ga.gov/Legislation/20192020/193609.pdf

To obfuscate these distinct roles, the Complaint misplaces its reliance on *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). *Grizzle* considered whether the Secretary was a proper party to a lawsuit, which requires only allegations of "some connection" to the challenged law. *Id.* Article III standing analysis is different. *Jacobson v. Fla. Sec'y of State*, No. No. 19-14552, slip op. at 37 (11th Cir. Sept. 3, 2020) (citing *Ex Parte Young*, 209 U.S. 123, 157 (1908)). Further, *Jacobson* makes clear that the designation as a "Chief Election Officer" does not make all aspects of an election "traceable" to the Secretary. *Id.* (applying Florida law, which uses the same phrase). Also, no Georgia court has adopted *Grizzle*'s expansive reasoning.

### 1.   <u>Plaintiffs Lack Standing</u>.

Article III of the United States Constitution requires litigants to show an injury in fact that is "'certainly impending.'" *Jacobson*, slip op. at 12 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). Plaintiffs have failed to articulate facts to show an impending harm. Their argument is purely retrospective in nature and it does not allege facts claiming that, in November, (1) there will be a shortage of trained poll workers; (2) equipment—now being used for the second time in most jurisdictions—will fail; (3) technicians will be unavailable; (4) paper ballots will be in short supply; (5) poll workers will set up polling locations late;

and (6) insufficient pollbooks.  Consequently, the Complaint does not allege facts to show the requisite concrete and particularized injury.  *See Clapper*, 568 U.S. at 401.

### 2.  Plaintiffs Seek Unconstitutional Relief.

The Constitution also requires that the relief Plaintiffs seek will "likely [be] redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also*, *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1305 n.19 (11th Cir. 2019) (en banc).  *Jacobson* addressed this precise issue in the context of elections, and it precludes Plaintiffs from obtaining the relief they seek outside of the nine counties they sued.  Georgia's other 150 County Election Officials are not "obliged … in any binding sense … to honor an incidental legal determination [this] suit produce[s]." *Jacobson*, slip op. at 33 (citing *Lewis*, 944 F.3d at 1202-03) (alterations in original).  The resulting patchwork of election administration— court-mandated relief in nine counties and the status quo in all others—will create the very Equal Protection problem Plaintiffs complain of in Count III. [Doc. 1 ¶ 212 (citing *Bush v. Gore*, 531 U.S. 98, 104-05 (2000).]  Plaintiffs cannot simultaneously seek to have the State implement relief (in mostly Democratic counties) and not apply them statewide.  But, by failing to sue each of Georgia's counties, Plaintiffs cannot obtain statewide relief after *Jacobson*.

The State Defendants' regulatory authority does not change this conclusion. Having a federal court mandate the SEB promulgate a regulation would raise "serious federalism concerns, and it is doubtful that a federal court would have authority to order it." *Jacobson*, slip op. at 39-40.  As in Florida, the Secretary's status as the Chief Election Official does not empower him to order statewide relief either. *Jacobson*, slip op. at 32-33.

At the very least, Plaintiffs' purported relief violates the rule that "article III inhibits a federal court from entertaining any complaint that … if granted, may seriously infringe the constitutional rights of others." *Wymbs v. Republican State Exec. Comm. of Fla.*, 719 F.2d 1072, 1081 (11th Cir. 1983).  Thus, without suing everyone, Plaintiffs cannot obtain relief against anyone.

### 3. <u>Plaintiffs Proposed Relief Is Non-Justiciable</u>.

Plaintiffs seek relief that contains no judicially manageable standards and can far more easily be implemented by other branches of state and local government.  As a starting point, the Constitution delegates the manner to conduct federal elections to states.  U.S. Const. art. I, § 4, cl. 1.  Our founders' wisdom survives today.  Elected governments—particularly at the state level—can best determine the manner in which to conduct elections, respond quickly to changing environments, and they will be voted out of office if the populace is not satisfied

with their decisions.  In this light, Plaintiffs' proposed remedy is non-justiciable. In general, justiciability 'is the term of art employed to give expression to [the] limitation placed upon federal courts by the case-and-controversy doctrine.'" *Levy v. Miami-Dade Cty.*, 358 F.3d 1303, 1305 (11th Cir. 2004) (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Examining relief must occur "[b]efore adjudicating a matter." *Id*.  This requires consideration of whether "protection for the right asserted can be judicially molded." *Baker v. Carr*, 369 U.S. 186, 198 (1962).

Based on this precedent, the Plaintiffs' Complaint does not seek the kind of manageable standards that the Constitution requires: "article III inhibits a federal court from entertaining any complaint that … cannot be determined under judicially manageable standards." *Wymbs*, 719 F.2d at 1081.  When weighing whether the relief sought imposes judicially "discoverable and manageable standards …. The lack of judicially manageable standards may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch" of government. *Nixon v. United States*, 506 U.S. 224, 228-29 (1993).  Courts have also said that implementing judicially manageable standards is easier in cases seeking damages: "'By contrast, because the framing of injunctive relief may require the courts to engage in the type of operational decision-making beyond their competence and constitutionally committed to other branches, such

suits are far more likely to implicate political questions.'" *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1364 n.34 (11th Cir. 2007) (citing *Koohi v. United States,* 976 F.2d 1328, 1332 (9th Cir.1992)).

This precedent warrants dismissing Plaintiffs' lawsuit for numerous reasons. On the claim for declaratory relief, Plaintiffs' claims provide this Court with no judicially manageable standard to determine declare when a line becomes unconstitutional and when is it an unfortunate but incidental aspect of voting. Judge Totenberg could not discern an answer, and that was before the outbreak of COVID-19. *Georgia Shift v. Gwinnett Cty.*, 1:19-CV-01135-AT, 2020 WL 864938, at *5 (N.D. Ga. Feb. 12, 2020). "This Court cannot guarantee that voters will not have to stand in line." *Id.*

Similarly, Plaintiffs' proposed injunctive relief lacks any judicially manageable standards; it "would be too amorphous to be capable of enforcement." *Id.* This conclusion is made manifest by the numerous unanswerable questions that spring from Plaintiffs' requested relief. For example, how many BMDs does the Constitution require be located in a polling place? The Georgia General Assembly said one machine for every 250 voters in a polling location. O.C.G.A. § 21-2-367(b). Plaintiffs have not challenged this statute as unconstitutional, so does the Constitution require more machines? Can there be less in some polling locations

(e.g., based on early vote turnout) so that a county may relocate some machines to other polling places? This is the exact kind of question the Constitution leaves to state governments, which indicates the relief sought is non-justiciable. *See* U.S. Const. Art. I, § 4, cl. 1; *Nixon*, 506 U.S. at 228-29.

Moreover, given that early voting in the 2020 General Election begins in mere weeks, what kind of training for poll workers would be "adequate[]?" What kinds of materials should be used? Should it recognize differences between or within counties? How should it account for auditory learners versus visual ones? The General Assembly deferred this question to county election superintendents, and this Court should too. *See Nixon*, 506 U.S. at 228-29.

The questions do not end with BMDs and poll worker training. How many technicians or poll workers at each location satisfy the Constitution's First and Fourteenth Amendments? How is that determined from the Constitution's text, and do concerns about COVID-19 allow there to be fewer? What does the Constitution say about recruiting poll workers? Are the Secretary's current efforts constitutionally mandated and, if so, are they constitutionally insufficient?[6]

---

[6] *See* https://sos.ga.gov/index.php/elections/secretary_raffensperger_partners_
with_the_georgia_center_for_civic_engagement_to_recruit_poll_workers.

What constitutes a constitutionally "sufficient time [for the County Defendants] to set up polling locations?  How does the Court decide what constitutes a "sufficient" amount of backup paper pollbooks or emergency paper ballots?  And, how does the Court determine these constitutional mandates across 159 counties that vary by turnout, populace, and early vote turnout?  What constitutional text or decisional law sets forth what counts as "clear guidance and instructions" on emergency paper ballots?

None of these questions can be answered while maintaining any fidelity to the Constitution's text or precedent.  Instead, Plaintiffs seek an order that fails to "accomplish[] anything beyond abstractly commanding the" Defendants to obey the Constitution.  *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006).  The sort of decision-making Plaintiffs ask this Court to make is "little more than the judicial version of a hunter's stew: Throw in anything that looks interesting, stir, and season to taste." *June Medical Services LLC v. Russo*, 140 S.Ct. 2103, 2180 (Gorsuch, J., dissenting) (quoting *Rucho v. Common Cause*, 139 S.Ct. 2484 (2019)). Thus, not only is Plaintiffs' proposed relief non-justiciable, it leaves the Court with little option but to enter an "obey-the-law" injunction, which the Eleventh Circuit prohibits. *Id.*

4.      **Burford Abstention Warrants Dismissing Plaintiffs' Complaint**.

Under Georgia law, anyone, including the Plaintiffs can file a complaint with the SEB about the conduct of elections and alleged violations of State laws.  It is not a prerequisite to filing suit.  O.C.G.A. § 21-2-31(5).  However, "after the completion of appropriate proceedings," the SEB can issue fines, mandate training, publicly reprimand and issue other relief against persons found to violate State election laws.  O.C.G.A. § 21-2-33.1.  Indeed, and as discussed above, the SEB has referred two complaints about Fulton County's administration of the 2020 Primary to the Georgia Department of Law for investigation.  *Supra* at 5-6.  Decisions of the SEB can be appealed to Georgia's judicial branch for review.  O.C.G.A. § 21-2-33.1.

Put simply, the SEB provides a "timely and adequate state-court review of alleged violations of State election law." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989).  In such circumstances, "a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive

of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* The second element is met, and it highlights the problem with Plaintiffs' proposed patchwork relief. This is not a claim of exhaustion of administrative remedies, but one where courts have deferred to state governments' administrative practices. At the very least, this *Burford* abstention applies to the claims involving Fulton County.[7]

### 5. Plaintiffs' First and Fourteenth Amendment (*Anderson-Burdick*) Claim Fails (Count I).

Plaintiffs' allegations fail to state a claim under the *Anderson-Burdick* analysis of the First and Fourteenth Amendments. These cases utilize a sliding scale balancing test that weighs the "character and magnitude" of the alleged burden against the government's interest in the challenged law. *Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983); *see also Burdick v. Takushi*, 504 U.S. 428, 434 245 (1992). "When a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (citing *Anderson*, 460 U.S. at 788). Under *Anderson-Burdick*, the burden of persuasion and proof remains on the

---

[7] That Plaintiffs have not expressly raised issues of state law is not dispositive. *New Orleans Pub. Serv., Inc.*, 491 U.S. at 361 (1989).

Plaintiffs at all times. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009).

I<small>NJURY</small>.  The injury identified by the Plaintiffs is nominal, and incidental burdens do not violate the constitution. *Clingman v. Beaver*, 544 U.S. 581, 591 (2005).  While waiting in line may be viewed as burdensome by some, others claim the costs of transportation (in-person voting), time away from work (in-person voting), or postage (voting by mail) are burdens on voting.[8] Taking Plaintiffs' facts as true, the June 2020 primary was the first major election conducted during an ongoing pandemic. [Doc. 1 ¶¶ 45 190-96.]  As discussed above, facts do not show that the issues in June—including a new pandemic and new voting technology and protocols—will be present in November.

C<small>AUSATION</small>.  Further, Plaintiffs have not identified a policy that causes their alleged burden.  Under *Anderson-Burdick,* courts "have to identify a burden before [they] can weigh it." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring).  As held by Judge Batten when reviewing similar claims, "this is not a case in which the state applied its own policy, adopted a rule, or enacted a statute that burdened the right to vote.  In other words, this is not

---

[8] Indeed, Plaintiffs' counsel have unsuccessfully alleged postage is an unconstitutional burden. *New Georgia Project v. Raffensperger*, 1:20-CV-01986-ELR, 2020 WL 5200930, at *18-20 (N.D. Ga. Aug. 31, 2020).

*Burdick* … or *Anderson*." *Coalition for Good Governance v. Raffensperger*, 1:20-CV-1677-TCB, 2020 WL 2509092, at *3 n.2 (N.D. Ga. May 14, 2020).  Nor have the Plaintiffs alleged that the State is not doing enough to enforce them. This ends the inquiry under *Anderson-Burdick*. *See Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1281 (M.D. Ala. 2004).

Indeed, Plaintiffs' complaint does not really allege a Georgia practice caused the alleged harms, instead, the alleged injury stems from

> COVID-19, which all but the craziest conspiracy theorists would concede is not the result of any act or failure to act by the Government. And that fact is important when weighing the Defendants' management of the election. … the underlying burden on the right to vote emanates from a virus, which obviously was not created or imposed by Defendants.

*Coalition for Good Governance*, 2020 WL 2509092, at *3 n.2; *see also* [Doc. 1 ¶¶ 190-96, 200].  Under these circumstances, there is no cognizable injury caused by the State Defendants.  Thus, Plaintiffs appear to have adopted a *res ipsa loquitor* theory of liability, which asserts that any problem with election administration must be the State's fault.  This theory is inapplicable in constitutional litigation. *Hernandez v. Tregea*, 207CV149FTMUASPC, 2008 WL 11430028, at *10 (M.D. Fla. Dec. 1, 2008).

Even if the Plaintiffs identified State policies or challenged them as imposing an unconstitutional burden, they still have failed to allege facts showing an act of the State Defendants caused Plaintiffs' purported harm.  Nor can they: the State does not administer the aspects of the election that Plaintiffs allege led to long lines in a few counties. *See supra* at 7-10.

At best, Plaintiffs appear to allege that the state can "do more" or "do better" with training and providing technical support.  [Doc. 1 ¶ 200.]  Plaintiffs' can try to obtain such relief in Georgia courts through a mandamus action. But, the Constitution does not mandate government to act in excess of statutory requirements.  *Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registration & Elections*, 1:20-CV-00912-SDG, 2020 WL 1031897, at *7 (N.D. Ga. Mar. 3, 2020).  Nor can courts "sit as a guarantor of a flawless election," nor can they. *Georgia Shift*, 2020 WL 864938, at *6.

Beyond failing to state a legal claim, the factual pleadings upon which Plaintiffs rely are conclusory only.  They only recite the elements of a claim and are entitled to no weight.  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see, e.g.* [Doc. 1 ¶¶ 57 ("State Defendants … have entirely failed to reduce" lines); 119 ("elections administration issues traceable to the Cobb County Defendants and State

Defendants"); 200 (describing "long lines resulting from Defendants'" acts).]
They describe no causal link between the alleged harm and the acts of the State.
Instead, Plaintiffs group Defendants together despite their differences.

STATE INTEREST.  Because the Plaintiffs have not identified a policy at issue,
it is impossible for the State, at this time, to articulate what the State's interest in
those policies are.  Should Plaintiffs further explain their position, the State
reserves the right to explain its interest in its Reply Brief.

### 6. **Plaintiffs' Substantive Due Process Claim Fails (Count II)**.

Count II alleges that long lines violate Plaintiffs' substantive due process
rights.  There is no Eleventh Circuit precedent for this claim, and Plaintiffs' own
authority is inapposite. [Doc. 1 ¶ 205 (citing *NE Ohio Coalition for the Homeless
v. Husted*, 696 F.3d 580, 597 (6th Cir. 2012) (addressing "extraordinary voter
restrictions" related to poll workers ability to invalidate a ballot); *Warf v. Bd. of
Elections of Green Cty., Ky.*, 619 F.3d 553, 559 (6th Cir. 2010) (addressing an
"officially sponsored election procedure" and not state inaction).]  This circuit
appears to treat substantive due process claims involving elections as those arising
under an *Anderson-Burdick* framework.  *See Billups*, 554 F.3d at 1346,1352-53.
Consequently, and for the reasons set forth above, this Court should dismiss Count
II of Plaintiffs' Complaint.

The inquiry can end here, as the Eleventh Circuit has cautioned that courts "must take seriously the Supreme Court's caution against expanding the concept of substantive due process." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1304–05 (11th Cir. 2003) (citing *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, (1992)).  Perhaps because of this, the only case the State Defendants have found that addresses substantive due process in the context of elections comes is *Swanson v. Pitt*, 330 F. Supp. 2d 1269, 1278 (M.D. Ala. 2004).  There, a citizen unsuccessfully challenged the Democratic Party of Alabama's refusal to allow him to qualify as a candidate on substantive due process grounds. *Id.* at 1269.  Judge Thompson held that a substantive due process claim requires allegations that the challenged act is "arbitrary or conscience shocking in a constitutional sense." *Id.* at 1278.  The Complaint does not include such allegations.

7.    **Plaintiffs' *Bush v. Gore* Claim Fails (Count III)**.

Plaintiffs' final claim is alleged only against the State Defendants and alleges that State election officials' "failure to prevent or remedy extremely long lines" in some counties violates the Equal Protection Clause of the Fourteenth Amendment. [Doc. 1 ¶¶ 210-14 (citing *Bush*, 531 U.S. at 104-05).]  This claim should be dismissed for numerous reasons.

First, as addressed above, Plaintiffs' requested relief would lead to the type of "disparate treatment" about which they complain. *Supra* at 11-12.

Second, Plaintiffs have not alleged that the State Defendants have intentionally discriminated against voters in the nine counties that Plaintiffs chose to sue.  Under at least traditional Equal Protection jurisprudence, this is fatal. *Democratic Executive Comm. of Florida v. Lee*, 915 F.3d 1312, 1335 (11th Cir. 2019) (Tjoflat, J., dissenting).

Third, Plaintiffs have not alleged arbitrary or disparate treatment on the part of the State.  *See* [Doc. 1 ¶ 212.]  Plaintiffs have not alleged, for example, that the State treats the County Defendants differently than others or that the State has taken action in some counties but not in those sued in this lawsuit.  Instead, Plaintiffs continue their inapplicable *res ipsa loquitor* theory, which alleges little more than "something is happening in nine counties.  It must be the State's fault." This is not a cognizable legal theory under 42 U.S.C. § 1983. *Hernandez*, 2008 WL 11430028, at *10.

Fourth, and similarly, Plaintiffs do not cite different laws that are applicable in different places.  In fact, Plaintiffs challenge no law at all.  Without more, this contention does not raise a cognizable violation of the United States Constitution. *See Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980) (acknowledging human

error in elections does not violate the Constitution); *Georgia Shift*, 2020 WL 864938, at *5 (acknowledging courts cannot mandate perfect elections).

Finally, *Bush v. Gore* was expressly "limited to the present circumstances" where a state court order established no uniform standards to count votes. 531 U.S. at 109.  This case is not about how votes are cast.  In fact, the final ruling in a case cited in Count II of Plaintiffs' Complaint supports Defendants.  *See Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 636 (6th Cir. 2016).  The *Husted* court concluded that "differences in the local application of provisions" did not violate Equal Protection.

## CONCLUSION

The State Defendants are not unsympathetic with many Georgians' frustration with the long lines seen in a few counties during the 2020 Primary election.  That is why the State Defendants are addressing the issue now.  For their part, Plaintiffs seek an order that contains no justiciable standards and to which they are not entitled.  For these reasons, the State Defendants request that this Court GRANT their Motion to Dismiss.

This 8th day of September 2020.

Christopher M. Carr
Attorney General
GA Bar No. 112505
Bryan K. Webb
Deputy Attorney General
GA Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
Charlene McGowan
Asst. Attorney General
Ga. Bar No. 697316
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Carey Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Brian Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
**Robbins Ross Alloy Belinfante Littlefield LLC**

500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250
*Attorneys for State Defendants*

## <u>L.R. 7.1(D) CERTIFICATION</u>

I certify that this **DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS** has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this Brief has been prepared using 14-pt Times New Roman font.

<u>*/s/ Josh Belinfante*</u>
Josh Belinfante
Georgia Bar No. 047399

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

with the Clerk of Court using the CM/ECF system, which automatically sent

counsel of record e-mail notification of such filing.

This 8th day of September 2020.

*/s/ Josh Belinfante*
Josh Belinfante
