# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LUCILLE ANDERSON, SARA ALAMI, GIANELLA CONTRERAS CHAVEZ, DSCC, and DEMOCRATIC PARTY OF GEORGIA, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State and Chair of the Georgia State Election Board, *et al.*,<br><br>*Defendants*. | CIVIL ACTION<br><br>FILE NO. 1:20-CV-03263-MLB |

## RESPONSE OF DOUGLAS COUNTY DEFENDANTS TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW

At the Court's invitation, the Douglas County Defendants ("Douglas County") file this response to Plaintiffs' Supplemental Memorandum in Support of Their Motion for Preliminary Injunction.[1] Additionally, Douglas County intends to provide supplemental information tomorrow in response to

---

[1] Douglas County also adopts by reference the arguments in the briefs filed by the other County Defendants in Response to Plaintiffs' Supplemental Memorandum if they apply to all County Defendants or to the claims brought against Douglas County, including, but not limited to, the arguments about standing and Plaintiffs' misapplication of *Anderson/Burdick*.

the Court's Order outlining why Plaintiffs fail the *Anderson/Burdick* analysis of Douglas County and how their "expert's" suggestions will cause more chaos and irreparable harm to Douglas County voters in the November 2020 election than the nonexistent "harms" they claim.

**Introduction**

Plaintiffs statements about Douglas County's June 2020 primary election are incorrect. Although Plaintiffs say that "multiple polling places in Douglas County were ordered to stay open late because of long lines," (Doc. 148 at 15), that is not true: only three polling places had extended hours and none of them were because of long lines. As shown in the Order dated June 9, 2020 and attached hereto as Exhibit A ("June 9th Order"), the Superior Court of Douglas County ordered that three precincts needed extended time because of "software errors" that delayed their openings. As a result, those polling places remained open for the exact amount of time of their delayed openings.

So what exactly is Plaintiffs' case against Douglas County? The Court will not find it in their Complaint or in Plaintiffs' briefing or in their "expert" reports. Instead, with no basis in fact, Plaintiffs continue to manufacture a case on the fly against Douglas County (and the other County Defendants). Plaintiffs cannot attribute a single past, present, or future harm to Douglas County's conduct. Nor do they even identify a single act of unconstitutional

conduct by Douglas County. Plaintiffs also identify no law, rule, or regulation they claim violates federal law. Because Article III and the Eleventh Amendment require something more than what Plaintiffs offer, the Court should deny their request to effectively appoint their hired "expert" as Georgia's election czar to oversee the November 2020 election.

## Summary of Facts

### I. Plaintiffs do not identify past harms.

In their Complaint, Plaintiffs assert that "[v]oters in Douglas County faced excessively long lines during the June Primary due to Voting System failures, and other persistent elections administration issues traceable to the Douglas County Defendants and the State Defendants." (Doc. ¶ 176). Yet Plaintiffs do not identify the "failure" and "other persistent elections administration issues" in their Complaint or any other document before the Court.

As to the June 9, 2020 primary, Plaintiffs allege "[t]hree polling locations in Douglas County were not able to open on time due to 'software errors.'"(*Id*.) At one polling location, Lithia Springs High School, none of the machines were working when the polls were supposed to open. Plaintiffs then conclude that "[v]oters in Douglas County waited upwards of two and-a-half hours to vote." (*Id*.) Then Plaintiffs say:

> A Douglas County Superior Court Judge extended voting hours at the three Douglas County voting locations that opened late due to the malfunctioning voting equipment, including Lithia Springs High School, which remained open for an extra hour and 45 minutes.

*(Id.* ¶ 178).

Without factual basis in their Complaint or in their other supplemental filings, Plaintiffs then broadly conclude:

> Douglas County has not taken sufficient measures to ensure that enough polling locations and other crucial election resources, from operable voting machines to polling staff, are located where voters (and particularly minority voters) can access them.

*(Id.* ¶ 179).

**II.  The evidence reflects Douglas County faced an issue in turning on voting machines that has since been addressed and is unlikely to recur.**

In the June 2020 primary, Douglas County faced an issue of human error turning on voting machines at three polling places. (*See* Ex. A; Doc. 106-1 Declaration of Milton Kidd.) As a result, Precinct 736 South and Precinct 738 opened at 7:20 a.m. and 7:05 a.m., respectively. The Lithia Springs High School Precinct 1275 opened at 8:45 a.m. *(Id.)* Thus, the Superior Court of Douglas County allowed these locations to remain open for the same amount of time by which they were delayed in opening. *(Id.)*

Douglas County learned from this experience and made several changes in anticipation of the November 2020 election. *(Id.)* Looking into the Lithia Springs High School incident, Douglas County determined that it resulted from human error and not an error of the electronic voting machines. *(Id.)* Therefore, it removed the elections manager who oversaw that location and replaced the manager with a manager with better experience. *(Id.)* In addition, Douglas County attributed the length of the delay to the availability of on-site technical support. *(Id.)* To address this, Douglas County communicated with the State of Georgia and requested an on-site technician for every polling location for the November 2020 election. *(Id.)* On September 30, 2020, Douglas County received confirmation from the State of Georgia's vendor for electronic voting machines, Dominion, that it will provide them with an on-site technician for every polling location during the November 2020 election. *(Id.)*

Independent of powering on the machines, Douglas County made further changes to its on-site allocations after the June 9, 2020 primary. Douglas County increased the number of poll pads, BMDs, and ballot scanners to many of its precincts. (*See* Dkt.132 at Ex. A-B.) As for issuance of emergency paper ballots to voters at a polling place, the State Election Board's Rules and Regulations (*See* State Election Board Rule 183-1-12-.11) already determine whether an emergency situation exists and afford the election supervisor with

5

discretion to decide whether there is an emergency that issuing paper ballots to vote rather than vote using electronic ballot markers. *(Id.)* Thus, Douglas County intends follow the existing State Election Board Rules and Regulations pertaining to the availability and use of emergency paper ballots at its polling places during the November 2020 election. *(Id.)*

## Argument

Even though the issues Douglas County encountered fall on human error and not "because of long lines" as Plaintiffs incorrectly assert, Plaintiffs still claim that Douglas County should adhere to Plaintiffs' preferred and aspirational allocations of election equipment for the November 2020 election. Under *Nken v. Holder*, however, Plaintiffs must show (1) that they will likely succeed on the merits; (2) irreparable injury absent a stay; (3) that the stay will not substantially injure the other interested parties; and (4) that a stay is in the public interest. *New Ga. Project v. Raffensperger*, No. 20-13360-D, 2020 U.S. App. LEXIS 31405, at *4 (11th Cir. Oct. 2, 2020) *citing* 556 U.S. 418, 434 (2009). Because Plaintiffs cannot even show a past injury or attribute a future injury to the conduct of Douglas County, the Court should deny their request for the extraordinary relief of a preliminary injunction.

## I. Plaintiffs skip over the "irreparable harm" prong.

After crunching the data Douglas County provided (which Plaintiffs admitted during Friday's conference call "had no issues"), Plaintiffs purported "expert" analysis reflects that, even in the worst-case scenario, Douglas County voters will face an average wait time of only *39 minutes or less at every precinct no matter the number of registered voters*. (Doc. 149-1, 19.) Still, Plaintiffs' take a stab at manufacturing "irreparable harm" by speculating that, during a 15-minute window, two precincts *could* face a "maximum wait time [sic] to be nearly 2-hour long." (Doc. 149-1, 17). But to get to the 119 and 116-minute wait times at these locations that Plaintiffs now cherry-pick from their "expert's" estimations, the Court would need to ignore the fact that over half of Douglas County voters use advance voting (early voting or absentee ballot) to vote on Election Day. The Court would also need to ignore the data from the 2016 federal elections showing that Douglas County did not encounter anywhere close to the voter turnout cited by Plaintiffs.

Nor is there any evidence in the record that Douglas County voters faced constitutionally unlawful long lines in *any* previous elections. Nor do Plaintiffs attribute their assertions to any data on length of lines in Douglas County. Instead, Plaintiffs rely only on speculation and guesswork about *potential* wait times at *some* locations during *some* parts of the day *if* a number of factors

come to pass. Yet Plaintiffs' reliance on the terms "if", "could", and "may" to couch their allegations of harm is a clear indication that the harm they allege is merely speculative. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 5641992) (holding that plaintiffs' "'some day' intentions" to return to locations where they might be deprived of the opportunity to observe endangered animals did "not support a finding of the 'actual or imminent' injury that our cases require"); *see also Landes v. Tartaglione*, No. 04-3163, 2004 U.S. Dist. LEXIS 22458, at *7-8 (E.D. Pa. Oct. 28, 2004).

But the lack of evidence supporting Plaintiffs claims does not end with their faulty "expert" analysis. Plaintiffs entire theory of harm and causation as to Douglas County rests on their incorrect assertion that the June 9th Order issued by the Douglas County Supreme Court extended the hours of operation at certain polling places because of "long lines." (Doc. 148 at 15.) Not so.

Rather, the June 9th Order shows that, because three precincts opened later than 7:00 a.m. due to "software errors," which, as already explained above, were human errors, the Court provided a remedy of keeping polls open for the exact time of delay for each location. (Ex. A) Nothing more and nothing less. This is not evidence of past long lines at the June primary that supports an inference that long lines will exist at the November 2020 election. Thus,

Plaintiffs simply present no more than hypotheticals to the Court. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

Plaintiffs also invent a "30-minute rule" out of whole cloth. There is no case in the Eleventh Circuit or at the Supreme Court level dictating a 30-minute rule and holding that a 29-minute wait is constitutional, but a 31-minute wait is unconstitutional. Instead, Plaintiffs cite a newspaper article where the Georgia Secretary of State made an aspirational statement that "voters shouldn't have to wait more than 30 minutes to vote."[2] But that statement did not come from the Constitution or the Georgia Election Code; it was merely a goal. So can Plaintiffs claim a federal injury based on a standard that does not exist and upon facts that contradict their central theory of recovery against Douglas County? No.

Nothing about this election looks like the elections of the past. And nothing about Plaintiffs prior alleged injuries are capable of repetition, yet evading review. Instead, this is a new electoral system for Georgia. And Plaintiffs' complaint relies on a speculative chain of events too attenuated to survive dismissal. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 401 (2013).

---

[2] https://www.ajc.com/news/state--regional-govt--politics/bill-takes-aim-long-lines-election-day-georgia/vs2a3q9pj15G7FstUPVzaL/

Because Plaintiffs theory of harm and causation fails, the Court should deny their requested preliminary injunction.

## II. The Eleventh Amendment bars Plaintiffs' claims.

Although Plaintiffs state no such claim in their Complaint or in their briefing, they now seem to claim that Douglas County may violate O.C.G.A. § 21-2-367(b) by not allocating enough voting machines. Douglas County disputes such a claim. But even if it were true, Eleventh-Amendment immunity bars that theory of recovery.

While *Ex Parte Young*, 209 U.S. 123 (1908), provides an exception to Eleventh-Amendment immunity, it does so only for prospective injunctive relief grounded in a violation of *federal* law. *See Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 105–106 (1984). This is because the *Ex Parte Young* exception "'rests on the need to promote the vindication of federal rights,' but in a case alleging that a state official has violated state law, this federal interest 'disappears.'" *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1290 (11th Cir. 2015). Thus, Eleventh-Amendment immunity bars Plaintiffs claims to the extent premised on an alleged violation of O.C.G.A. § 21-2-367(b) because they must pursue claims for alleged violations of state law in state court. When the "claims necessarily rely on a determination that a state official has not complied with state law, [then] a determination . . . is barred by sovereign

immunity." *Fair Fight Action v. Raffensperger*, Case No. 1:18-cv-05391-SCJ (Doc. 188), slip op. at 15 (December 27, 2019) (denying motion for preliminary injunction).

**Conclusion**

Plaintiffs identify *no* "past wrongs" or predicted future injury to satisfy Article III standing–nor do they link any such allegation to the conduct of Douglas County. Instead, Plaintiffs' case against Douglas County is premised on incorrect "facts" and alleged "data" that is based on assumptions, speculation, and goal-oriented "formulas." But even if the Court accepts Plaintiffs' "facts" and "data" and "formula" at face value, Plaintiffs still do not meet constitutional standing requirements. Since Plaintiffs own analysis identifies no past, present, or future harms related to the "long lines" theory cited in their Complaint, the Court should deny their motion for a preliminary injunction.

Respectfully submitted this 6th day of October, 2020.

*/s/ David A. Cole*
David A. Cole
Georgia Bar No. 142383
*/s/ Timothy M. Boughey*
Timothy M. Boughey
Georgia Bar No. 832112
**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway
Suite 1600

Atlanta, Georgia 30339
(T) 770.818.0000
(F) 770.937.9960
(E) dcole@fmglaw.com
tboughey@fmglaw.com

*Counsel for the Douglas County Defendants*

# CERTIFICATE OF COMPLIANCE

Under L.R. 7.1(D), the undersigned hereby certifies that this RESPONSE OF DOUGLAS COUNTY DEFENDANTS TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ Timothy M. Boughey
David A. Cole
Georgia Bar No. 142383
Timothy M. Boughey
Georgia Bar No. 832112
**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
(T) 770.818.0000
(F) 770.937.9960
(E) dcole@fmglaw.com
tboughey@fmglaw.com

*Counsel for the Douglas County Defendants*