IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LUCILLE ANDERSON, *et al.*,<br><br>　　*Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State and Chair of the Georgia State Election Board, *et al.*,<br><br>　　*Defendants*. | CIVIL ACTION FILE<br>NO. 1:20-cv-03263-MLB |

## SECOND SUPPLEMENTAL DECLARATION OF KRISTI ROYSTON

Pursuant to 28 U.S.C. § 1746, I, Kristi Royston, make the following declaration:

1.

My name is Kristi Royston. I am over the age of 21 years, and I am under no legal disability that would prevent me from giving this declaration. I am giving this declaration based on my personal knowledge.

2.

I previously explained my background in my declaration filed at [Doc. 108-1] and provided information to the Court in a Supplemental Declaration

1

[Doc. 142-1]. I incorporate everything I previously explained in both of those declarations.

3.

I have reviewed the report of Dr. Yang dated October 5, 2020. [Doc. 149-1]. While largely approving of Gwinnett's equipment allocations, he has three criticisms: First, he claims that Gwinnett County does not provide one voting machine for every 250 voters because we do not have enough BMDs. Second, he identifies two precincts, HARBINS A (001) and DUNCANS D (039) where he estimates that the maximum wait time will be 31 minutes due to having three Poll Pads instead of four. Third, he says we can reallocate Poll Pads to place four Poll Pads at 001 and 039 but that this would leave eight precincts with only one Poll Pad.

4.

Gwinnett County utilizes the 1 to 250 ratio in O.C.G.A. § 21-2-367 to mean one BMD for every 250 active voters in a precinct. It is unclear to me why Dr. Yang says we do not use that allocation. It is possible that, because our initial equipment allocation was designed on the prior month's voter-registration information, there may have appeared to be a mismatch when using the more updated voter-registration information on our website. We

2

have begun Logic and Accuracy testing based on the equipment allocation provided to the Plaintiffs that utilizes the 1/250 ratio.

5.

The number of Poll Pads for each precinct is not a matter of not having enough equipment but rather an issue of personnel. In other words, we have plenty of Poll Pads, but do not necessarily have trained issuing clerks who can operate the Poll Pads for those precincts.

6.

In determining equipment allocations, we have several precincts where we would ideally have between three and five Poll Pads. But recruiting individuals to be trained as issuing clerks in the pandemic environment continues to be a challenge.

7.

We are confident we will have at least three issuing clerks at the precincts where we indicated we will deploy three Poll Pads. We will continue to recruit and review our training and, if we are able to recruit and train additional issuing clerks for precincts, we will add additional Poll Pads to those precincts, including to HARBINS A (001) and DUNCANS D (039).

8.

The minimum number of Poll Pads we would have in any precinct is two. Having a single Poll Pad not only invites a single point of failure but also would mean that we only had one issuing clerk in that precinct. I would never be comfortable reallocating our equipment such that there was only a single Poll Pad in each precinct.

9.

In summary, our decision to allocate three instead of four Poll Pads to HARBINS A (001) and DUNCANS D (039) is based solely on staffing. If we can recruit and train additional issuing clerks before Election Day, we will deploy additional Poll Pads to those and other precincts.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of October, 2020.

_Kristi L. Royston_
Kristi L. Royston